STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF BURLEIGH                  SOUTH CENTRAL JUDICIAL DISTRICT


MARK KRUG,                          )         CIVIL NO. _____
                                   )
              Plaintiff,            )
                                   )
       vs.                         )         **SUMMONS**
                                   )
UNITED PRODUCTS CORPORATION  )
OF AMERICA, INC.,                  )
                                   )
              Defendant.    )


THE STATE OF NORTH DAKOTA TO THE ABOVE NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to appear and defend against the

Complaint in this action, which is herewith served upon you, by serving upon the

undersigned an answer or other proper response within twenty (20) days after the

service of this Summons upon you, exclusive of the day of such service. If you fail to do

so, judgment by default will be taken against you for the relief demanded in the

Complaint.

Dated at Bismarck, North Dakota, this 7th day of October 2009.


                              TSCHIDER & SMITH

                        BY: _____
                              Sean O. Smith
                              Attorney for Plaintiff
                              Professional Building - Suite 200
                              418 East Rosser Avenue
                              Bismarck, North Dakota 58501


1

**EXHIBIT**
A

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA | | IN DISTRICT COURT |
| COUNTY OF BURLEIGH | | SOUTH CENTRAL JUDICIAL DISTRICT |

| | | |
|---|---|---|
| MARK KRUG, | ) | Civil No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | |
| UNITED PRODUCTS COPRPRATION | ) | |
| OF AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff MARK KRUG ("Krug") hereby alleges as follows:

## THE PARTIES

1.      Krug resides in Bismarck, North Dakota, and is currently on administrative leave from an employment position he holds as salesman for Norandex Building Materials Distribution ("Norandex") with responsibility for a limited geographic territory located entirely within the State of North Dakota.

2.      Defendant UNITED PRODUCTS CORPORATION OF AMERICA, INC. ("UPC") is, and was at all times mentioned herein, a corporation that is incorporated under the laws of the State of Minnesota, with its principal place of business in St. Paul, Minnesota.

## JURISDICTION & VENUE

3.      This action commenced by Krug seeks a declaratory judgment concerning the rights of Krug and UPC in relationship to an Employment Non-Competition, Non-Solicitation and Confidentiality Agreement ["Non-Competition Agreement"] which is described more particularly below. The Court has jurisdiction of the parties and the subject matter of this proceeding in accordance with the provisions of N.D.Cent.Code §32-23-01.

4.      This Court also has jurisdiction over this action, pursuant to N.D.Cent.Code §32-06-01 and 32-06-02, because Krug resides in Burleigh County and works in North

Case 1:09-cv-00068-DLH-CSM   Document 1-2   Filed 10/20/09   Page 3 of 36

Dakota, the agreement in question was drafted to restrain Krug's employment activities in North Dakota, and all of the actions relevant to these claims took place in North Dakota.

5. Krug seeks declaratory relief establishing that the Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement ("Non-Competition Agreement") between UPC and Krug is void under North Dakota law and cannot be enforced by UPC.

6. Krug further seeks damages for UPC's unlawful interference with his employment relationship with Norandex.

7. Venue is proper in District Court for the South Central Judicial District. A substantial amount of the events, acts and/or omissions that form the basis for Krug's request for declaratory relief have occurred in this District.

**GENERAL ALLEGATIONS**

8. UPC is a distributor of building products, including roofing, siding and windows.

9. Krug was employed by UPC from October 22, 2007 to July 7, 2009 as an outside salesman, with responsibility for a territory almost entirely within the State of North Dakota.

10. UPC required Krug to execute the Non-Competition Agreement. A true and correct copy of this document is attached hereto as Exhibit A.

11. The Non-Competition Agreement purports to prohibit Krug from competing with UPC throughout the entire state of North Dakota, 175 miles west of the Montana/North Dakota border, and 175 miles south of the North Dakota/South Dakota border, and from soliciting UPC's customers for a period of 18 months following the termination of Krug's employment with UPC.

12. On July 7, 2009, UPC laid off Krug from employment without any cause attributable to Krug.

13.     On or after September 21, 2009, Krug commenced employment with Norandex.

14.     Like UPC, Norandex is a distributor of building products, including roofing, siding and windows.

15.     In his employment position at Norandex, Krug's job responsibilities include sale of building products in a limited geographic territory within the State of North Dakota, including the cities of Bismarck, Mandan, Beach, Bowman, and Dickinson.

16.     On September 24, 2009, counsel for UPC sent a letter to Ron Penas, Regional Manager of Norandex, and Dale Hettich, Branch manager of Norandex, informing them that Krug's employment is in violation of the Non-Competition Agreement and that UPC believes that Norandex induced Krug to violate the Non-Competition Agreement. The letter further encouraged Norandex to "reconsider the propriety of its employment relationship" with Krug.  A true and correct copy of this document is attached hereto as Exhibit D.

17.     In effect, UPC's letter threatens Norandex with litigation unless it discharges Krug.

18.     Effective as of September 25, 2009, Krug was placed on administrative leave from his employment by Norandex as a result of the UPC September 24, 2009, letter.

## COUNT ONE:
### Declaratory Relief

19.     Krug restates all previous allocations and incorporates them herein by reference.

20.     An actual controversy has arisen and now exists between UPC and Krug. UPC is threatening Krug's employer with litigation unless it discharges Krug from Krug's employment with Norandex based upon the void and unenforceable provisions of the Non-Competition Agreement.

21. The Non-Competition Agreement purports to prohibit Krug from competing with UPC throughout the entire state of North Dakota and from soliciting UPC's customers following the termination of Krug's employment with UPC. These prohibitions are void and unenforceable under controlling North Dakota law and public policy, including without limitation N.D. Cent. Code § 9-08-06.

22. In the event that the void and unenforceable provisions of the Non-Competition Agreement are enforced and Krug thereby has his employment terminated with Norandex, Krug will incur substantial damages and losses for which no adequate remedy at law exists.

23. Krug therefore seeks declaratory relief from this Court finding that the Non-Competition Agreement between UPC and Krug is unenforceable and cannot be used to prohibit Krug from fully performing his employment responsibilities for Norandex.

## COUNT TWO:
### Tortious Interference with Business Relationship

24. Krug restates all previous allegations and incorporates them herein by reference.

25. UPC was aware of the employment relationship between Krug and Norandex.

26. On September 24, 2009, counsel for UPC sent a letter to Ron Penas, Regional Manager of Norandex, and Dale Hettich, Branch manager of Norandex (Exhibit "B"), informing them that Krug's employment is in violation of the Non-Competition Agreement and that UPC believes that Norandex induced Krug to violate the Non-Competition Agreement.

27. The letter further encouraged Norandex to "reconsider the propriety of its employment relationship" with Krug and, in effect, seeks Norandex to discharge Krug under threat of litigation.

28.     UPC is attempting to enforce the Non-Competition Agreement despite knowledge that it is unenforceable under N.D. Cent. Code § 9-08-06.

29.     As a result of UPC's actions, Krug's employment with Norandex has been suspended.

30.     Krug is at risk of losing his employment position with Norandex altogether due to UPC's actions.

31.     Krug has sustained damage to his reputation and goodwill in the building products industry as a result of UPC's actions.

32.     UPC's acts as described above were intentional and unjustified, and were the direct and proximate cause of Krug's damages.

33.     UPC is placed upon notice that Krug reserves the right to seek to amend this Complaint requesting exemplary damages as permitted by N.D.Cent.Code §32-03.2-11.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows.

1.      For a judicial declaration that the purported "Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement" between UPC and Krug is unenforceable and cannot be used to prevent Krug from fully performing his employment responsibilities to Norandex.

2.      For a temporary restraining order and for preliminary and permanent injunctions prohibiting, enjoining, and restraining Defendant, and its officers, agents, employees, representatives, and all persons acting in concert with them, and each of them, from engaging or participating in the unlawful acts and conduct described above, and specifically from enforcing, or attempting to enforce, the illegal noncompetition restriction against Plaintiff or any other person within the State of North Dakota;

3.   For an order directing Defendant make restitution to Plaintiff, who was injured by Defendant's acts;

4.   For general and compensatory damages according to proof;

5.   For costs of suit incurred herein;

6.   For reasonable attorneys fees; and

7.   For such other and further relief as may be just and proper.

Dated this 7th day of October 2009.

TSCHIDER & SMITH

By: _____
Sean O. Smith, ID #03741
Attorney for the Plaintiff
418 E. Rosser Ave., Ste. 200
Bismarck, ND 58501
(701) 258-4000

## VERIFICATION

STATE OF NORTH DAKOTA   )
                        ) ss.
COUNTY OF BURLEIGH      )

Mark Krug, being first duly sworn deposes and states that he is the Plaintiff in the above-entitled action and he executed this Complaint, that he has read the Complaint and knows the contents thereof, and that the same is true of his own knowledge.

_____
Mark Krug

STATE OF NORTH DAKOTA   )
                        ) ss.
COUNTY OF BURLEIGH      )

On this 7th day of October 2009, before me personally appeared Mark Krug, known to me to be the person who is described in and who executed the within instrument and acknowledged to me that he executed the same.

_____
Sean O. Smith, Notary Public

SEAN O SMITH
Notary Public
State of North Dakota
My Commission Expires Sept. 15, 2011

Oct. 8. 2009 11:56AM   TSCHIDER & SMITH                                No. 9914   P. 10



# UNITED PRODUCTS

EXHIBIT____*A*____

## Employment Agreement Acknowledgement

United Products Corporation
200 West Sycamore Street
St. Paul, MN 55117

I understand that as part of the hiring process of United Products Corporation, I will be asked to sign a Non-Compete Agreement that will prohibit me from being employed by another company offering products for sale similar to those of United Products for a period of eighteen months after termination of my employment with United Products Corporation.

_Mark Kaug_
**Print Name**

_(signature)_                              10-22-07
**Signature**                              **Date**

_(witness signature)_
**Witness**

NOTHING CONTAINED IN THIS DOCUMENT CREATES OR IS INTENDED TO CREATE AN EMPLOYMENT CONTRACT FOR ANY SPECIFIC LENGTH OF TIME BETWEEN UNITED PRODUCTS CORPORATION AND ANY OF ITS EMPLOYEES.

S:/Hr/Forms/EmploymentAgreementAck.doc                              Rev. 10/09/02

## EMPLOYMENT NON-COMPETITION, NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

**THIS AGREEMENT** is made as of the date written below by and between UNITED PRODUCTS CORPORATION OF AMERICA, a Minnesota corporation with it principal place of business in St. Paul, Minnesota, ("Employer"), and _Mark A. Krug_ ("Employee"), currently residing at _3744 W. Regent Dr. Bismarck ND_.

Employee understands, acknowledges and agrees that Employer's offer of employment was and is conditioned upon Employee's acceptance of all the terms contained in this Agreement, and that it is necessary for Employee to sign this Agreement to validly accept Employer's offer. Employee acknowledges that he/she has had an opportunity to read and review this Agreement before signing and that he/she understands each of its terms.

### 1.    EMPLOYEE WARRANTIES AND OBLIGATIONS.

Employee represents to Employer that the duties he/she can perform for Employer are not in any way restricted by any prior employment agreements, restrictive covenants or confidentiality agreements with former employers. Accordingly, if any former employer claims that Employee is restricted by such agreement from performing any duties for Employer, Employee will defend and hold Employer harmless in connection with any such claim, and will pay any attorneys' fees, costs, damages or award which Employer may incur or which may be assessed against Employer.

During the term of employment Employee will conscientiously and to the best of his/her ability perform all duties assigned to Employee by Employer, and will devote his/her full time and attention to the performance of such duties to the exclusion of any other commercial duties or pursuits whatsoever.

Employee further represents to Employer that, if his/her employment with Employer is subsequently terminated for any reason, he/she has the necessary education, training, knowledge, skills and/or experience to obtain other employment or otherwise earn a living without having to work for or on behalf of Employer's competitors, or otherwise violate any restrictions on competition or use of confidential information contained in this Agreement.

### 2.    AT WILL EMPLOYMENT.

This Agreement shall not affect Employee's "at will" employment status; that is, either Employee or Employer may terminate the employment relationship at any time, for any reason or for no reason, with our without notice. However, termination of the employment relationship shall not affect the continued enforceability of this Agreement.

### 3.    NON-COMPETITION/NON-SOLICITATION.

Employee hereby agrees that during the term of employment, and for a period of 18 months following the effective date of Employee's separation from employment with Employer for any reason, Employee will not:

(a)    Directly or indirectly own, manage, operate, finance, be employed by, render services to, participate in, consult with, or in any way provide sales or management services to or for the benefit of Employer's Competitors [A "Competitor" is defined as one who sells or solicits the sale of roofing materials, siding, windows, or other products similar or equivalent to those sold or distributed by Employer during the term of Employee's employment (the "Competing Products"), or who manufactures Competing Products distributed or sold, in the same geographic market area in which Employee serviced Employer's customers, supervised those who did, or otherwise performed job duties or had responsibility for Employer's business during any of the twelve (12) months immediately preceding Employee's termination of employment.  Because Employee is being hired for a position that will require him/her to perform job duties and have responsibilities for Employer's business at the company-wide level, and not just as a Branch Office employee, the geographic area covered by the foregoing restriction shall presumptively include Employer's entire actual delivery and customer area, defined to include the entire State of North Dakota and 175 miles west of the Montana/ North Dakota border and 175 miles south of the North Dakota/ South Dakota border]; or

(b)    Solicit or accept orders for Competing Products from any customer or prospective customer of employer with whom Employee had actual contact or supervised anyone who did, or for whom Employee otherwise performed job duties or had responsibility for Employer's business during any of the twelve (12) months immediately preceding Employee's termination of employment; or

(c)    Solicit, induce or cause any of Employer's employees to engage in any activity prohibited to Employee by this Agreement or to terminate their employment with Employer; or

(d)    Solicit, induce or cause any of Employer's vendors or suppliers to terminate or alter the terms of any agreement with Employer or otherwise cease doing business with Employer; or

(e)    Interfere with any of Employer's contractual relationships; or

(f)    Assist others, or otherwise attempt to accomplish through indirect means, that which is directly prohibited under this Agreement.

### 4.    CONFIDENTIAL INFORMATION AND EMPLOYER'S PROPERTY.

Employee understands that as a sales or management employee of Employer he/she will be provided with and become privy to information developed or learned by Employer, at Employer's expense, which is not generally known by Employer's competitors; not readily ascertainable by proper means or without substantial effort and expense; intended by Employer to be kept confidential; and which provides Employer with a competitive advantage in the

-2-

marketplace (the "Confidential Information"). A nonexhaustive exemplar listing of what Employer intends to be Confidential Information includes, but is not limited to, the identity of prospective or target customers; customer buying habits and preferences, customer usage requirements, customer credit histories or classifications, Employer's non-list and non-standard pricing, rebates, discounts, mark-ups, sales volumes by product and customer, gross and net margins, non-published and non-public financial information, purchase and vendor agreements, employee agreements, employee compensation, employee performance evaluations, sales strategies, business plans, marketing plans and financial plans.

Employee acknowledges and agrees that Employee will not disclose, publish or disseminate Employer's Confidential Information to any person, firm or entity, or use such Confidential Information for Employee's own benefit, other than in furtherance or Employer's interests during the term of employment, or at any time thereafter during which said information remains Confidential, unless otherwise permitted in writing by Employer or required by law. Employee's duty of confidentiality shall survive the termination of employment and will survive the termination of this Agreement for any reason.

Upon separation from employment for any reason, Employee will immediately deliver to Employer all documentation obtained from or created for Employer, in whatever manner stored, including information stored electronically or otherwise stored on a computer or for use with a computer, whether such documentation contains Confidential Information or not, and all other property and things that belong to Employer or pertain to the business or financial affairs of Employer, together with all copies. All property and things that may be furnished to Employee by Employer to assist Employee in performing Employee's duties will at all times remain Employer's property.

## 5.    REMEDIES FOR VIOLATION OF AGREEMENT.

In the event of an actual or threatened breach of any provision of this Agreement by Employee, Employee acknowledges that Employer will suffer irreparable injury, for which the damages would be extremely difficult to quantify, and, as a consequence, Employer will be entitled to an immediate injunction prohibiting and restraining Employee from violating the terms of this Agreement, in addition to any other remedies available to Employer at law or in equity.

In addition to all other remedies available, Employer will be entitled to recover from Employee its reasonable costs, expenses, and attorneys' fees incurred in connection with successfully enforcing it rights under, or preventing the violation of this Agreement.

## 6.    VENUE AND CHOICE OF LAW

This Agreement is made and entered into in St. Paul, Ramsey County, Minnesota, where Employer maintains its principal place of business. Except to the extent that the public policy of any jurisdiction demands otherwise, the parties agree that: (i) this Agreement will be interpreted according to, and any disputes arising out of or related to this Agreement shall be governed by the laws of the State of Minnesota, without regard to conflicts or choice of law provisions that may otherwise be applicable; (ii) any litigation or proceeding arising out of or related to this

Oct. 8. 2009 11:58AM    TSCHIDER & SMITH                                No. 9914   P. 14

Agreement shall be exclusively venued in the Ramsey County, Minnesota District Court, St. Paul, Minnesota; and (iii) Employee consents to the personal jurisdiction of said court.

## 7.   INTERPRETATION AND EFFECT.

Employer's failure to enforce the terms of this Agreement in any given instance will not constitute a waiver of its rights hereunder with respect to other violations of this Agreement. Except to the extent barred by any statute or other rule of law, if any provision of this Agreement is held invalid, or changed, or modified by a court of competent jurisdiction, the remaining provisions will remain enforceable according to their terms or to the maximum extent permitted by law.

This Agreement constitutes the entire Agreement of the parties with respect to the matters addressed herein, and supersedes any prior agreements or understandings, oral or written. This Agreement will be binding upon both parties and their respective successors, assigns, or legal representatives; provided, however, that Employee may not assign, transfer or pledge this Agreement without the express written consent of Employer. Headings used in this Agreement are for convenience only, and do not constitute part of the parties' agreement or otherwise aid in the interpretation of this Agreement.

This Agreement may be altered or amended only by a written agreement signed by both parties.

Dated _____, 200_

[EMPLOYEE]                                    UNITED PRODUCTS CORPORATION
                                              OF AMERICA

Mark A Krug                          By: _____
(print name)

_____              Its: _____
(signature)

255598.doc

# Henson & Efron
## PROFESSIONAL ASSOCIATION

220 South Sixth Street, Suite 1800
Minneapolis, Minnesota 55402-4503

Telephone (612) 339-2500
Facsimile (612) 339-6364
www.hensonefron.com
firm@hensonefron.com

EXHIBIT_____ B_____

dolsen@hensonefron.com

September 24, 2009

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Ron Penas
Regional Manager,
Norandex Building Materials Distribution
309 South 16th Street
Fort Calhoun, NE 68023

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Dale Hettich
Branch Manager,
Norandex Building Materials Distribution
631 Channel Drive
Bismarck, ND 58501

RE:    United Products Corporation of America, Inc. / Mark Krug
       (Non-Competition, Non-Solicitation and Confidentiality Agreement)
       Our File: U116 / 16208

Dear Mssrs. Penas and Hettich:

This firm represents United Products Corporation of America, Inc. ("UPC"), a distributor of building products, including roofing, siding and windows. We have been asked to communicate with you in connection with Norandex Building Materials Distribution's ("Norandex's") recent hiring of former UPC employee Mark Krug.

As we understand the facts, Mr. Krug was employed by UPC from October 22, 2007, to July 7, 2009. When Mr. Krug was first offered employment, he was advised, and he acknowledged and agreed that, as a condition of employment, he would be asked to sign a Non-Compete Agreement that would prohibit him from being employed by another company offering products for sale similar to those of UPC for a period of eighteen months after termination of his employment with UPC. For your convenience and reference, a copy of Mr. Krug's October 22, 2007, signed Employment Agreement Acknowledgement (the "Acknowledgement") is enclosed.

In accord with his signed Acknowledgment, and as a condition of his employment by UPC, on October 20, 2007, Mr. Krug signed an Employment Non-Competition, Non-Solicitation and Confidentiality Agreement (the "UPC Agreement") in which he agreed that, for a period of eighteen (18) months following the effective date of separation from employment for any reason he would not:

Ron Penas
Dale Hettich
September 24, 2009
Page 2

> " . . . be employed by, render services to . . . or in any way provide sales or management
> services to or for the benefit of [UPC's] Competitors . . . [.]".

(UPC Agreement, Par. 3(a)).

"Competitor" and "Competing Products" are respectively defined in the UPC Agreement as:

> " . . . one who sells or solicits the sale of roofing materials, siding, windows, or other
> products similar or equivalent to those sold or distributed by [UPC] during the term of
> [Krug's] employment (the "Competing Products") in the same geographic market area in
> which [he] serviced [UPC's] customers, supervised those who did, or otherwise
> performed job duties or had responsibility for [UPC's] business during any of the twelve
> (12) months immediately preceding [his] termination from employment. . . . the
> geographic area covered by the foregoing restriction shall presumptively include [UPC's]
> entire actual delivery and customer area, defined to include the entire state of North
> Dakota and 175 miles west of the Montana / North Dakota border and 175 miles south of
> the North Dakota / South Dakota border[.]

(Id.)

In addition to the restrictions on post-employment competition, Mr. Krug also agreed that he:

> . . . will not disclose, publish or disseminate [UPC's] Confidential Information to any
> person, firm or entity, or use such Confidential Information for [his] own benefit . . .
> unless otherwise permitted in writing by [UPC] or required by law. [His] duty of
> confidentiality shall survive the termination of employment and will survive the
> termination of this Agreement for any reason."

(UPC Agreement, Par. 4).

Confidential Information is defined in the UPC Agreement to include, among other things,
UPC's non-public information regarding:

> " . . . the identity of prospective or target customers; customer buying habits and
> preferences, customer usage requirements, customer credit histories or classifications,
> [UPC's] non-list and non-standard pricing, rebates, discounts, mark-ups, sales volumes
> by product and customer, gross and net margins, non-published and non-public financial
> information, purchase and vendor agreements, employee agreements, employee
> compensation, employee performance evaluations, sales strategies, business plans,
> marketing plans and financial plans."

(Id.). For your convenience and reference a copy of the UPC Agreement is enclosed.

While employed by UPC, Mr. Krug worked in a position as an outside salesman, with
responsibility for a territory roughly including North Dakota, eastern Montana and northern

Ron Penas
Dale Hettich
September 24, 2009
Page 3

South Dakota. In connection with his UPC employment, Mr. Krug had access and was made privy to a great deal of the non-public customer, pricing and financial information listed above. In addition to the information he was provided on a daily and weekly basis for the specific customers with whom he dealt, Mr. Krug also attended company-wide sales meetings at which sales goals, plans and strategies were discussed, and he received detailed information regarding UPC's experience with and plans for specific customers served by other sales people and other branches. Mr. Krug also received detailed company sales reports on a regular basis, and had access to UPC's electronic data base of customer and pricing information.

We understand Mr. Krug has recently been, or is in the process of being hired by Norandex as an outside salesman to serve the same territory for which he was responsible as a UPC employee. A quick review of publicly available information confirms that Norandex falls squarely within the UPC Agreement's definition of a "Competitor," because it is in the business of soliciting the sale of and selling "Competing Products" within the same geographic area for which Mr. Krug was responsible as a UPC employee.

If our understanding of the facts proves to be correct, it is our opinion that Mr. Krug's employment with Norandex is in direct violation and breach of the terms of his UPC Agreement. His position as outside salesman with responsibility for a North Dakota territory will necessarily require him to use, disclose, publish and disseminate confidential information he obtained while employed by UPC. Additionally, his position will, by definition, require him to render sales or management services to or for the benefit of UPC's competitors, and to assist with the solicitation of, if not outright solicit orders from the same UPC customers and prospective customers with whom he dealt while a UPC employee.

If Norandex knew of the existence and terms of Mr. Krug's UPC Agreement before it made the decision to hire him, including the provisions regarding post-termination restrictions on competition and confidentiality, it is also our opinion that Norandex has unlawfully interfered with UPC's contractual relations and wrongfully induced and caused Mr. Krug to violate his UPC Agreement.

The consequences of Norandex's failure to respect UPC's contractual agreements with Mr. Krug, of course, are quite severe under Minnesota law. *See Kallok v. Medtronic, Inc.*, 573 N.W.2d 356 (Minn. 1998) (third party who interferes with and causes breach of covenant not to compete may be held liable for tortious interference with contract, including damages and attorneys' fees). You will note that the UPC Agreement contains a choice of law provision specifying that Minnesota law shall control, and a venue provision specifying that any litigation arising out of or related to the Agreement shall be conducted in the Ramsey County, Minnesota District Court. (See, UPC Agreement, Par. 6).

Having now been provided with a copy of Mr. Krug's Acknowledgment and UPC Agreement, and having been formally notified of UPC's position, we expect that Norandex will not further encourage or assist Mr. Krug to engage in any prohibited act or conduct, and that it will

Ron Penas
Dale Hettich
September 24, 2009
Page 4

reconsider the propriety of its employment relationship with Mr. Krug as may be appropriate under the circumstances. .

On the other hand, if you believe that we have in any way misstated the facts, or that Norandex's employment of Mr. Krug does not otherwise violate the restrictions to which he voluntarily agreed, we ask that you immediately let us know, or have your attorneys do so if you are represented. We will promptly review any information you provide and reassess our opinions as may be appropriate.

If we do not hear from you or your attorneys before the close of business on Friday, October 2, 2009, we will have no choice but to assume that our understanding of the facts is correct, and that Norandex is knowingly employing Mr. Krug in violation of his Agreement. In that event, we will advise UPC to proceed as necessary to enforce its rights without further notice to you.

We look forward to your response.

Very truly yours,

HENSON & EFRON, P.A.

David Bradley Olsen

DBO:caf:378870.DOC
Enclosure
cc:    M. Allen Hatfield
       Kim Swanson
       Scott Anderson
       Mark Krug

STATE OF NORTH DAKOTA              IN DISTRICT COURT

COUNTY OF BURLEIGH        •      SOUTH CENTRAL JUDICIAL DISTRICT

|  |  |  |
|---|---|---|
| MARK KRUG, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED PRODUCTS CORPORATION | ) | |
| OF AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION</u>

Plaintiff Mark Krug ("Krug"), pursuant to N.D.Cent.Code §§32-06-01 and 32-06-02, and N.D.Cent.Code §32-23-01, moves this Court for a Temporary Restraining Order and/or Preliminary Injunction. In support of the Motion, Krug shows the following:

1.      Krug has contemporaneously herewith filed a Verified Complaint and an Affidavit of Mark Krug with this Court. Krug's Verified Complaint is made part hereof and incorporated herein by reference.

2.      As stated in the Verified Complaint, Defendant, United Products Corporation of America, Inc. (UPC) is trying to enforce the Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement ("Non-Competition Agreement") between UPC and Krug to prevent Krug from working for his current employer, Norandex Building Materials Distribution ("Norandex").

3.      The Non-Competition Agreement is void and unenforceable pursuant to N.D. Cent. Code § 9-08-06.

4.      UPC is a distributor of building products, including roofing, siding and windows.

5.      Krug was employed by UPC from October 22, 2007 to July 7, 2009 as an outside salesman, with responsibility for a territory almost entirely within the State of North Dakota.

6.      As a condition of employment, UPC required Krug to execute the Non-Competition Agreement.    The Non-Competition Agreement purports to prohibit Krug from competing with UPC throughout the entire state of North Dakota, 175 miles west of the Montana/North Dakota border, and 175 miles south of the North Dakota/South Dakota border, and from soliciting UPC's customers for a period of 18 months following the termination of Krug's employment with UPC.

7.      Krug was laid off and terminated from employment by UPC on July 7, 2009, for no fault attributable to Krug.

8.      Krug was unemployed for the time period of July 8, 2009, until September 21, 2009.

9.      On or after September 21, 2009, Krug commenced employment with Norandex, a competitor of UPC.  In his position at Norandex, Krug's job responsibilities include sale of building products within a limited geographic region entirely in the State of North Dakota.

10.      Although the Non-Competition Agreement is unenforceable under N.D. Cent. Code § 9-08-06, UPC informed Norandex that Mr. Krug is in violation of the Non-Competition Agreement and suggested that Norandex "reconsider the propriety of its employment relationship with Mr. Krug."    In effect, UPC demands Norandex discharge Mr. Krug under threat of litigation even though it is certainly aware the Non-Competition Agreement is unenforceable under North Dakota Law.

11.      For the reasons set forth in the Complaint, unless UPC is enjoined from enforcing the Non-Competition Agreement, Krug will be irreparably harmed by UPC's attempts to prevent him from pursuing his career and the resulting damage to his reputation and goodwill in the industry.

2

12.   Economic loss for such harm is incalculable and Krug has no adequate remedy at law.

13.   The evidence presented to the Court establishes that there exists such an urgency in this proceeding that supports the immediate ex parte issuance of a temporary restraining order so that the parties' rights are preserved.

WHEREFORE, Plaintiff prays for the immediate ex parte issuance of a Temporary Restraining Order and/or Preliminary Injunction restricting Defendant from:

1.   Engaging or participating in the unlawful acts and conduct described above;

2.   Specifically from enforcing, or attempting to enforce, the illegal noncompetition restriction against Plaintiff or any other person within the State of North Dakota; and

3.   For such other relief as this Court may deem appropriate.

Dated this 7th day of October 2009.

TSCHIDER & SMITH

BY: _____
    Sean O. Smith
    Attorney for Plaintiff
    Professional Building - Suite 200
    418 East Rosser Avenue
    Bismarck, North Dakota 58501

3

Oct. 8. 2009 12:02PM    TSCHIDER & SMITH    No. 9914    P. 26

STATE OF NORTH DAKOTA                    IN DISTRICT COURT

COUNTY OF BURLEIGH              SOUTH CENTRAL JUDICIAL DISTRICT

| | | |
|---|---|---|
| MARK KRUG, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED PRODUCTS CORPORATION | ) | |
| OF AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF EX PARTE MOTION
## FOR TEMPORARY RESTRAINING ORDER
## AND/OR PRELIMINARY INJUNCTION

Pursuant to N.D.Cent.Code §§32-06-01, 32-06-02, and 32-23-01, Plaintiff Mark Krug ("Krug") seeks the immediate issuance of a temporary restraining order and preliminary injunctive relief against Defendant United Products Corporation of America, Inc. ("UPC"), to prevent UPC from enforcing the Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement ("Non-Competition Agreement") between UPC and Krug and to prevent UPC from interfering with Krug's current employment.

## I.    BACKGROUND

Krug resides in Bismarck, North Dakota, and currently works as a salesman for Norandex Building Materials Distribution ("Norandex") with responsibility for a limited territory including certain geographic regions of North Dakota, as detailed in the Verified Complaint.

UPC is a distributor of building products, including roofing, siding and windows, and has a principal place of business in St. Paul, Minnesota. Krug was employed by

1

UPC from October 22, 2007 to July 7, 2009 as an outside salesman, with responsibility for a territory almost entirely within the State of North Dakota.

As a condition of employment, UPC required Krug to execute the Non-Competition Agreement, attached as Exhibit A to the Verified Complaint. The Non-Competition Agreement purports to prohibit Krug from competing with UPC throughout the entire state of North Dakota, 175 miles west of the Montana/North Dakota border, and 175 miles south of the North Dakota/South Dakota border, and from soliciting UPC's customers for a period of 18 months following the termination of Krug's employment with UPC.

On September 21, 2009, Krug began working for Norandex. Like UPC, Norandex is a distributor of building products, including roofing, siding and window. In his position at Norandex, Krug's job responsibilities include sale of building products in a limited territory within the State of North Dakota.

On September 24, 2009, counsel for UPC sent a letter to Ron Penas, Regional Manager of Norandex, and Dale Hettich, Branch manager of Norandex, informing them that Krug's employment is in violation of the Non-Competition Agreement and that UPC believes that Norandex induced Krug to violate the Non-Competition Agreement. The letter further encouraged Norandex to "reconsider the propriety of its employment relationship" with Krug. See Verified Complaint, Exhibit B. In effect, UPC is demanding Norandex discharge Krug under threat of litigation. On September 25, 2009, Krug was placed on administrative leave by Norandex.

## II.    ARGUMENT

### A.    Legal Standards

#### 1.    Standard for the Issuance of a Temporary Restraining Order

Rule 65 of the North Dakota Rules of Civil Procedure establishes that the procedure for granting temporary restraining orders and injunctions shall be controlled

2

Case 1:09-cv-00068-DLH-CSM    Document 1-2    Filed 10/20/09    Page 22 of 36

by N.D.Cent.Code Chapter 32-06.

A restraining order, or an order to show cause, may be issued ex parte without a hearing under N.D.Cent.Code §32-06-07 if "the moving papers [show] that there exists such an exigency or occasion as requires the immediate issuance of an order so that the rights of the parties may be preserved." "The purpose of a temporary restraining order is to maintain the status quo until a determination can be made on the temporary injunction issue." Amerada Hess Corp. v. Furlong Oil and Minerals Co., 336 N.W.2d 129, 132 (N.D. 1983) (citing in part 42 A. Jur. 2d, Injunctions, § 10; other internal citations omitted).

To obtain a temporary restraining order pursuant to North Dakota Century Code Section 32-06-07, the movant must show:

> (1) substantial probability of succeeding on the merits;
>
> (2) irreparable injury;
>
> (3) harm to other interested parties; and
>
> (4) effect on the public interest.

Magrinat v. Trinity Hosp., 540 N.W.2d 625, 628-629 (N.D. 1995); see also Amerada, 336 N.W. 2d at 133 (noting plaintiff made a sufficient prima facie case entitling it to a temporary restraining order by alleging irreparable harm and posting adequate bond). "The granting of a temporary restraining order does not create a right, but merely protects the rights of a complainant by maintaining the status quo until such time that a show cause hearing on the temporary injunction is held." Amerada, 336 N.W. 2d at 132.

3

## B.    North Dakota Standard for Non-Competition Agreements

The Non-Competition Agreement at issue is governed by North Dakota law, notwithstanding the Minnesota choice of law provision in the Agreement. Under North Dakota law, a choice of law provision in an employment agreement containing a covenant not to compete will not be effective if its enforcement is contrary to public policy or statute. See Pruco Sec. Corp. v. Montgomery, 264 F. Supp. 2d 862, 868-869 (N.D. 2003); Forney Indus. v. Andre, 246 F. Supp. 333, 334-335 (N.D. 1965).

Section 9-08-06 of the North Dakota Century Code expressly voids restraints of business, unless the restraint falls within one of two specified categories. More specifically, Section 9-08-06 provides, "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void," with exceptions for the sale of the goodwill of a business or the dissolution of a partnership. See Forney, 246 F. Supp. at 334-33. In contrast, Minnesota courts will enforce non-competition agreements "if and to the extent they are reasonably necessary to safeguard a protectable interest of the employer and do not impose unnecessary hardship on the employee's livelihood." IDS Life Ins. Co. v. SunAmerica, Inc., 958 F. Supp. 1258, 1273 (N.D. Ill 1997) (applying Minnesota substantive law; citing references omitted).

Given that the application of Minnesota law would be contrary to the law of the North Dakota, North Dakota law should govern the Non-Competition Agreement. See Forney, 246 F. Supp. at 334-33 ("[I]n the view of this Court the substantive law of the State of North Dakota is controlling, and that part of each contract which calls for the application of Colorado law is held to be ineffective in construing the covenants not to compete"). Indeed, the language of the Non-Competition Agreement effectively

4

recognizes North Dakota law (and venue) should apply in this situation by stating the choice of law and venue provisions are inapplicable when the public policy of any jurisdiction demands otherwise.

**C.     Krug is Likely to Prevail on the Merits of his Claims**

There is no question that the language of N.D. Cent. Code § 9-08-06 which provides, "[e]very contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind is to that extent void" expressly prohibits non-competition and non-solicitation agreements in the employment context.  See Warner and Co. v. Solberg, 634 N.W.2d 65, 71-72 (N.D. 2001).  As such, Krug is likely to prevail on his claim that the Non-Competition Agreement is void and unenforceable.

**D.     Krug Will Suffer Irreparable Injury if a TRO is not Granted**

After receiving the letter from UPC dated September 24, 2009, Norandex suspended Krug's employment.  As a result, Krug is placed into an uncertain economic environment whereby he is at risk of losing his employment and is not able to pursue his chosen career by learning the details of Norandex's products, developing relationships with Norandex's customers, learning about Norandex's customer's business needs and product preferences, or pursuing new customers.  Furthermore, Krug's goodwill and reputation with Norandex suffer as the uncertainty relating to his ability to perform his job grows.  This injury to his expertise, relationships, goodwill, and reputation are irreparable and cannot be compensated for by monetary damages alone.  Cf. CDI Energy Servs. v. West River Pumps, Inc., 567 F.3d 398, 403 (8th Cir. 2009) (noting that the harm at issue could be remedied through damages).

5

E.    **No Third Parties Will be Harmed if UPC is Enjoined from Enforcing the Non-Competition Agreement**

A declarative order finding the Non-Competition Agreement unenforceable and permitting Krug to work for Norandex will not harm any third parties. See Shrink Mo. Gov't PAC v. Adams, 151 F.3d 763, 765 (8th Cir. 1998) (finding no harm to third parties). On the contrary, Krug will sustain substantial harm should he be prevented from being employed by Norandex or other companies in the building products industry. An order restraining UPC from interfering with Krug's position at Norandex merely maintains the situation as it currently exists; denying this request for a temporary restraining order, however, will harm Krug substantially.

F.    **The Public Interest Favors a Finding that the Non-Competition Agreement is Unenforceable**

Describing the prohibition against enforcement of non-competition agreements, the North Dakota Supreme Court has stated, "[i]t is the right of the public's access to the services offered by the employee that is more significant than the employee's interests." Warner and Co. v. Solberg, 634 N.W.2d 65, 70 (N.D. 2001). North Dakota therefore deems the public's access to services to be a more pressing policy concern than the details of the relationship between a particular employee and employer. CDI Energy Servs. v. West River Pumps, Inc., 567 F.3d 398, 404 (8th Cir. 2009). In light of this, the public interest favors a finding that the Non-Competition Agreement is unenforceable.

G.    **Tortious Interference with Business Relations**

As argued above, the Non-Competition Agreement is void and unenforceable under N.D. Cent. Code § 9-08-06. Although UPC knew or should have known that it was not enforceable, it contacted Norandex to inform them that Krug was

6

in violation of the Non-Competition Agreement and indicated it would commence litigation against Norandex unless it discharged Krug. As a result of UPC's actions, Krug's employment has been suspended. He is at risk of losing his position with Norandex, and his ability to pursue his career in sales will be hindered in many respects. He is unable to develop his knowledge and expertise of Norandex's products, he is unable to develop relationships with Norandex's current customers and learn about their business needs, and he is unable to develop new customer relationships on Norandex's behalf. His goodwill and reputation in this industry has been and will continue to be damaged as long as UPC continues to threaten his ability to work in this industry. See Hohn v. Spurgeon, 513 F.3d 827, 829 (8th Cir. 2008) (setting forth the elements of a cause of action for tortious interference with business relations).

## III.   CONCLUSION

Krug has established that his Non-Competition Agreement is void and unenforceable under North Dakota law. As such, the declaratory relief which Krug seeks is necessary to enable him to continue to pursue his career without further interference and delay. Krug requests that the Court issue an immediate ex parte temporary restraining order which will last for no less than six (6) months as permitted by N.D.Cent.Code §32-06-03.

Dated this 7th day of October 2009.

TSCHIDER & SMITH

BY: _____
Sean O. Smith
Attorney for Plaintiff
Professional Building - Suite 200
418 East Rosser Avenue
Bismarck, North Dakota 58501

7

STATE OF NORTH DAKOTA

COUNTY OF BURLEIGH

MARK KRUG,

                     Plaintiff,

      vs.

UNITED PRODUCTS CORPORATION
OF AMERICA, INC.,

                     Defendant.

IN DISTRICT COURT

SOUTH CENTRAL JUDICIAL DISTRICT

CIVIL NO. 09 C2357

## TEMPRORARY RESTRAINING ORDER

Plaintiff has presented the Court with an Ex Parte Motion for Temporary Restraining Order and/or Preliminary Injunction. Upon full consideration of the Ex Parte Motion, and the evidence presented to the Court in support of the Motion, including Plaintiff's Verified Complaint, the Affidavit of Mark Krug, and supporting Memorandum, the Court finds that the immediate issuance of a Temporary Restraining Order without notice is necessary to protect the interest of the Plaintiff and preclude the Defendant from engaging or participating in the unlawful acts and conduct of seeking to enforce the unenforceable Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement between the Defendant and Plaintiff, which enforcement would prevent the Plaintiff from working for his current employer Norandex Building Materials Distribution, and to insure that the above-entitled pending litigation is not rendered ineffectual. The Court specifically finds that:

1. There is sufficient evidence presented to show that the Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement is not a valid or

RECEIVED & FILED

OCT 0 7 2009

Clk. of Crt. Burleigh Co.

enforceable contract under the laws of the State of North Dakota, as such contract is expressly prohibited by N.D.Cent.Code §9-08-06 and that the Plaintiff is entitled to temporarily restrain the actions of the Defendant having shown a substantial likelihood of prevailing on the merits and having presented sufficient evidence that the Plaintiff will sustain substantial harm should he be prevented from continuing employment with his current employer or other companies in the building products industry.

2. Upon the evidence presented, the Court finds that despite the execution of the Employment Non-Competition, Non-Solicitation, and Confidentiality Agreement between the Plaintiff and Defendant, the actions of the Defendant in issuing the letter to the Plaintiff's current employer would constitute a violation of the restriction on restraints of trade under N.D.Cent.Code §9-08-06.

3. The Court finds that the Defendant's activities are continuing and will result in irreparable harm to the Plaintiff for which there is no adequate remedy at law, and that an immediate ex parte Temporary Restraining Order is necessary to prohibit such activities, prevent further irreparable harm to the Plaintiff, and insure that further litigation in this action is not rendered ineffectual.

4. The Court finds that the relief requested is narrow and reasonable. The requested relief requires the Defendant to not interfere with the Plaintiff's employment position at Norandex or with any other company in the building products industry within the State of North Dakota and merely maintains the situation as it currently exists with the Plaintiff's employment position at

2

Received Time Oct. 8.    9:26AM

Norandex being allowed to continue.

5. The Court also finds that because the requested relief is narrow, the continuing harm alleged to be suffered by the Plaintiff outweighs any potential harm to the Defendant.

6. The Court finds that the immediate ex parte issuance of this Temporary Restraining Order is not adverse to public interest.

7. ACCORDINGLY, IT IS ORDERED that the Defendant is temporarily restrained from acting in any manner which would interfere with the Plaintiff's employment position at Norandex;

8. IT IS HEREBY FURTHER ORDERED, that this Temporary Restraining Order shall apply to and be binding upon the Defendant, any agent, servant, employee, attorney or other person acting in concert or participation with the Defendant who receives actual notice of this Temporary Restraining Order by personal service or otherwise;

9. IT IS HEREBY FURTHER ORDERED that this Temporary Restraining Order shall take full force and effect upon its entry, and the Plaintiff shall not be required to file any bond, surety, or other security for this Temporary Restraining Order;

10. IT IS HEREBY FURTHER ORDERED, that Plaintiff is entitled to this Temporary Restraining Order without notice to the Defendant to prevent the Defendant from causing further harm which would render further resolution ineffectual, prior to the entry of this Temporary Restraining Order; and

11. IT IS HEREBY FURTHER ORDERED that this Temporary Restraining Order

shall expire 180 days from the date of its entry, unless extended by order of the Court or agreement of the parties.

SO ORDERED, this 7 day of October 2009, at 4:30 p.m.

District Court Judge

4

STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF BURLEIGH                     SOUTH CENTRAL JUDICIAL DISTRICT

MARK KRUG,                          )              Civil No. _____
                                   )
                Plaintiff,         )
                                   )
vs.                                )       **AFFIDAVIT OF MARK KRUG**
                                   )
UNITED PRODUCTS COPRPRATION        )
OF AMERICA, INC.,                  )
                                   )
                Defendants.        )

Mark Krug ["Krug"], being first duly sworn, deposes and states as follows:

1.    Krug is the Plaintiff in the above-entitled action and this Affidavit is filed in support of the Motion for Temporary Restraining Order and/or Permanent Injunction which is filed herewith. The statements set forth below are true and correct and are based upon the personal knowledge of Krug.

2.    Krug contemporaneously herewith has filed a Verified Complaint with this Court and Krug herein incorporates all the factual statements set forth and recited in the Verified Complaint in this Affidavit.

3.    Krug presently resides in Burleigh County, North Dakota with his wife and three children at 8302 Bluffview Drive, Bismarck, ND 58504.

4.    Krug was laid off from employment by United Products Corporation of America, Inc., ["UPC"], Defendant in the above-entitled action as of the effective date of July 7, 2009.

5.    The termination of employment did not result from any acts or omissions of Krug. Following the termination of employment of Krug by UPC, Krug was required to apply for and receive unemployment insurance benefits to

support his family. The Monetary Determination issued by Job Service of North Dakota is attached hereto as Exhibit "A".

6. Krug actively sought employment within North Dakota commencing on July 7, 2009, and continuing until September 21, 2009, at which time Krug secured employment with Norandex Building Materials Distribution ["Norandex"].

7. As an employee of Norandex, Krug is responsible for servicing the geographic territory located entirely within the State of North Dakota, predominantly serving the cities of Bismarck, Mandan, Dickinson, Beach, and Bowman.

8. Krug was notified by Norandex on September 25, 2009, that he was placed on administrative leave as a result of a letter issued by the legal counsel for UPC. Krug is presently on suspension from employment at Norandex.

9. If Krug loses his employment position with Norandex, it will result in significant financial hardships for myself and my family.

Dated this 7th day of October 2009.

_____
Mark Krug

STATE OF NORTH DAKOTA       )
                            ) ss.
COUNTY OF BURLEIGH          )

On this 7th day of October 2009, before me personally appeared Mark Krug, known to me to be the person who is described in and who executed the within instrument and acknowledged to me that he executed the same.

SEAN O SMITH
Notary Public
State of North Dakota
My Commission Expires Sept. 15, 2011

_____
Sean O. Smith, Notary Public

2-089

JOB SERVICE NORTH DAKOTA
BENEFIT SECTION
PO BOX 5507, BISMARCK, ND 58506-5507
701-328-4995
(TTY) 800/366/6888

## MONETARY DETERMINATION

EXHIBIT ____A____

```
DATE ISSUED    : 07/13/2009
SSN            : 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
EFFECTIVE DATE : 07/05/2009
CLAIM YEAR ENDS: 07/03/2010
```

MARK A KRUG
8302 BLUFFVIEW DR
BISMARCK ND 58504-9667

You have filed a claim for Unemployment Insurance benefits. Your Weekly Benefit Amount and the number of weeks (duration) you are eligible to receive are based on the wages you were paid between the dates of 04/01/2008 and 03/31/2009. Your Base Period wage history used to determine your Weekly Benefit Amount and your duration can be found on the reverse side of this determination.

To be eligible for Unemployment Insurance benefits, you need to have made at least $2795 over a minimum of two quarters of your Base Period and have met the minimum Duration Ratio of 1.50. The Duration Ratio is determined by dividing your total wages in the Base Period by your highest quarter of wages.

Your Weekly Benefit Amount can be determined by adding the highest 2 and 1/2 quarters of your base period wages and dividing them by 65. The minimum Weekly Benefit Amount you can receive is $ 43 and the maximum is $431.

If you believe that the wage information listed for your Base Period is incorrect or that some of your wages are missing contact the Job Service North Dakota Claims Center at 701-328-4995 immediately. Choose option 3 after the language choice. Claim Center Representatives are available between 8:00 AM to 5:00 PM Monday through Friday, except holidays.

If it is later determined that payments should not have been allowed based on incorrect information, you will be required to repay any benefits received.

### Determination

*Your Weekly Benefit Amount for this benefit year is determined to be $431 per week for 26 weeks to make a maximum benefit amount of $11206.*

Case 1:09-cv-00068-DLH-CSM    Document 1-2    Filed 10/20/09    Page 34 of 36

EXHIBIT

| Employer | Quarters | | | | Total |
|---|---|---|---|---|---|
| | 2008-2 | 2008-3 | 2008-4 | 2009-1 | |
| UNITED PRODUCTS CORPORATI | 15288.70 | 13104.60 | 15288.70 | 12964.32 | 56646.32 |
| TOTAL : | 15288.70 | 13104.60 | 15288.70 | 12964.32 | 56646.32 |

Right of Appeal

If you disagree with this determination you must file an appeal no later than 07/27/2009. Appeals must be filed in writing and may be filed using the Request for Appeal form included with this determination. You must state the reason(s) you disagree with this determination so another determination may be made or an appeal scheduled. You may fax your appeal to 701-328-2728, mail it to the address listed at the top of this determination, or hand deliver it to any Job Service office.

STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF BURLEIGH              SOUTH CENTRAL JUDICIAL DISTRICT


MARK KRUG,                        )          CIVIL NO. 09-C-2357
                                 )
              Plaintiff,         )
                                 )
UNITED PRODUCTS                  )     **AFFIDAVIT OF SERVICE BY MAIL AND**
CORPORATION OF                   )     **FACSIMILE**
AMERICA, INC.,                   )
                                 )
              Defendant.         )


STATE OF NORTH DAKOTA      )
                           ) ss.
COUNTY OF BURLEIGH         )

Lori J. Rudland, being first duly sworn, on oath, deposes and says: That she is a citizen of the United States, over the age of twenty-one, and not a party to the above-entitled matter; that on the 8th day of October 2009, this affiant deposited in the mailing department of the United States Post Office at Bismarck, North Dakota, and delivered by facsimile a true and correct copy of the following documents filed in the above-captioned action:

1.  Summons
2.  Verified Complaint
3.  Affidavit of Mark Krug
4.  Ex Parte Motion for Temporary Restraining Order and/or Preliminary Injunction.
5.  Memorandum in Support of Ex Parte Motion for Temporary Restraining Order and/or Preliminary Injunction
6.  Temporary Restraining Order
7.  Affidavit of Service by Mail

That copies of the above documents were securely enclosed in an envelope with postage duly prepaid, and addressed as follows:

Henson & Efron
Attn: David Bradley Olsen
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Fax: (612) 339-6364

To the best of your affiant's knowledge, information and belief, such address as given above was the actual post office address of the party intended to be served.

That the above documents were duly mailed in accordance with the provisions of the North Dakota Rules of Civil Procedure.

_____
Lori J. Rudland

Subscribed and sworn to before me this 8ᵗʰ day of October 2009.

_____
Sean O. Smith, Notary Public
Burleigh County, North Dakota
My Commission expires: 9-15-11

SEAN O SMITH
Notary Public
State of North Dakota
My Commission Expires Sept. 15, 2011

H:\SEAN\KRUG\AOS.wpd